UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **WESTINGHOUSE ELECTRIC COMPANY, LLC,** )<br>)<br>**PLAINTIFF** )<br>)<br>v. )<br>)<br>**GARY HEALY,** )<br>)<br>**DEFENDANT** ) | CIVIL NO. 07-83-P-H |

**MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

The defendant's motion to dismiss challenges: (1) whether the plaintiff satisfied its burden in this diversity of citizenship case, 28 U.S.C. § 1332(a), to show that the amount in controversy exceeds $75,000; and (2) whether the plaintiff pleaded its claim of fraud with sufficient particularity under Fed. R. Civ. P. 9(b). The motion to dismiss is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

In this lawsuit, Westinghouse Electric Company, LLC ("Westinghouse") is trying to recover expenses that it claims employee Gary Healy ("Healy") fraudulently submitted for reimbursement. Westinghouse hired Healy in June of 2003; it terminated him in January of 2007. Compl. ¶¶ 4, 27; Healy Decl. ¶¶ 2, 13.

Healy's termination was the result of an investigation by Westinghouse into the legitimacy of his expense reports. Compl. ¶¶ 15–20. This investigation prompted a meeting on December 21, 2006 between Healy and three Westinghouse executives, as a result of which Healy was placed on unpaid leave. Compl. ¶¶ 21–25; Healy Decl. ¶¶ 9–11. Following this meeting, Westinghouse undertook analysis of all Healy's expense reports. This analysis revealed that during his employment Healy obtained $117,896.10 in reimbursed expenses. Goldblach Aff. ¶ 16; Maloney Aff. ¶ 14; Frisbey Aff. ¶ 15. Westinghouse concluded that only $29,296.55 of Healy's total expenses were legitimate.[1] Goldblach Aff. ¶ 17; Maloney Aff. ¶ 15; Frisbey Aff. ¶ 16. Westinghouse concedes that it is unable to classify as either "business" or "personal" $1,847.38 of Healy's expenses. Goldblach Aff. ¶ 18; Maloney Aff. ¶ 16; Frisbey Aff. ¶ 17. This leaves $86,752.17[2] in reimbursed expenses that Westinghouse maintains Healy submitted fraudulently. Goldblach Aff. ¶ 19; Maloney Aff. ¶ 17; Frisbey Aff. ¶ 18.

In a letter to Healy dated February 9, 2007, Westinghouse demanded full repayment of the alleged fraudulent expenses. Healy Decl. ¶ 14. Healy has not repaid any amount to Westinghouse. Compl. ¶ 29. Westinghouse filed its complaint against Healy in this Court on May 9, 2007, requesting full repayment, plus interest, costs of suit, reasonable attorney fees, and punitive damages based

---

[1] Westinghouse maintains that employees with positions similar to Healy's average approximately $10,000 in annual expenses. Healy worked about 3-1/2 years. Goldblach Aff. ¶ 17; Maloney Aff. ¶ 15; Frisbey Aff. ¶ 16.

[2] Westinghouse has modified its total claim against Healy from $89,461.46 to $86,752.17 to reflect refunds from American Express. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, at 2 n.1.

2

on theories of fraud, conversion, unjust enrichment, and violation of a duty of loyalty. Compl. ¶¶ 30–48.

In response to Westinghouse's complaint, Healy submitted his motion to dismiss on June 15, 2007, asserting failure to satisfy the amount in controversy and failure to comply with Fed. R. Civ. P. 9(b) as to allegations of fraud.

## ANALYSIS

### (1)   *Amount in Controversy*

To invoke a federal court's subject matter jurisdiction by reason of diversity of citizenship, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). The amount in controversy is determined at the time the complaint is filed. Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001). Waivable affirmative defenses, such as the statute of limitations, are not considered in determining the amount in controversy. See Scherer v. The Equitable Life Assurance Soc'y of the United States, 347 F.3d 394, 397–98 (2d Cir. 2003) ("affirmative 'defenses asserted on the merits' may not be used to whittle down the amount in controversy") (quoting Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982)); Giffin v. Smith, 256 F. Supp. 746 (N.D. Okla. 1966); 14B Charles A. Wright et al., Federal Practice and Procedure § 3702, at 74 (3d ed. 1998) ("Wright & Miller") ("Even when the complaint discloses a valid defense to the plaintiff's action, the sum claimed by the plaintiff controls, since the defendant may not assert that defense or may not ultimately prevail on it."). Therefore, I do

not consider the dispute between Westinghouse and Healy over whether the New Hampshire or Maine statute of limitations applies.[3]

The burden rests on the party attempting to invoke the court's jurisdiction, here Westinghouse, to show that the amount in controversy exceeds the jurisdictional minimum. Duchense v. American Airlines, Inc., 758 F.2d 27, 28 (1st Cir. 1985) (citing Gibbs v. Buck, 307 U.S. 66, 72 (1939)). However, "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938); Spielman, 251 F.3d at 5. "Once the [amount in controversy] is challenged . . . 'the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdiction amount.'" Id. (quoting Dep't of Recreation and Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). That is the standard I apply here. Pleadings and affidavits can be considered. Id.

Westinghouse's complaint and subsequent response to Healy's motion to dismiss, including multiple affidavits, provide the particular facts related to each allegedly fraudulent expense. According to Westinghouse's pleaded facts, the amount in controversy is $86,752.17. Although Healy generally disputes the facts

---

[3] Even if the statute of limitations question were relevant to the amount in controversy, the amount potentially affected is only $5,700, Mem. of Law in Support of Def.'s Mot. to Dismiss at 6, which is insufficient to alter the amount-in-controversy analysis.

4

upon which Westinghouse has accused him of fraud, it is not a "legal certainty" that Westinghouse will recover less than $75,000.[4]

Healy relies on <u>Valentin v. Hospital Bella Vista</u>, 254 F.3d 358 (1st Cir. 2001), to argue that I must resolve now his broad factual challenges to the amounts Westinghouse claims in order to determine the amount in controversy. But <u>Valentin</u> involved the factual issue of the plaintiff's state of citizenship, an issue wholly separate from the underlying merits. <u>Id</u>. at 362–64 & n.3. Unlike citizenship, the amount in controversy hurdle does not require a court to engage in extensive fact-finding, but rather only to assess whether the plaintiff has claimed the sum in good faith or whether "to a legal certainty," the claim is really for less. See <u>Spielman</u>, 251 F.3d at 5 (quoting <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288–89)). Healy will have ample opportunity to challenge the factual basis of Westinghouse's claimed damages as the lawsuit progresses.

**(2)** ***Fed. R. Civ. P. 9(b)***

In general, the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). One exception is claims of fraud, which are "subject to heightened pleading requirements." <u>United States ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 226 (1st Cir. 2004). Fed. R. Civ. P. 9(b) requires that, "[i]n

---

[4] 14B <u>Wright & Miller</u> § 3702, at 98–101:
> Only three situations clearly meet the legal-certainty standard for purposes of defeating the court's subject matter jurisdiction: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff; and 3) when

*(continued on next page)*

all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "The clear weight of authority is that Rule 9 requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980); see also Alternative Sys. Concepts, Inc. v. Synopsys, 374 F.3d 23, 29 (1st Cir. 2004) ("the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation"). Westinghouse's claim that Healy's expense reimbursement claims were fraudulent meets that standard.

In the case relied upon by Healy, Karvelas, the plaintiff's "failure to identify with particularity any actual false claims that the defendants submitted to the government [was], ultimately, fatal to his complaint." 360 F.3d at 235. Karvelas was a False Claims Act case, where an employee claimed that his hospital employer had submitted false claims for Medicaid and Medicare payments. Concerning the particularity requirement, the court stated:

> The purpose of this requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery."

Id. at 226 (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)). Westinghouse's complaint about Healy's employee expense account

---

independent facts show that the amount of damages was claimed by
*(continued on next page)*

6

reimbursements is quite different from a *qui tam* action like Karvelas. The Westinghouse complaint provides adequate detail about how Healy's expense claims were allegedly fraudulent:

> 17. During his review, Mr. Burnham noted that [Healy] had listed Mr. Burnham as an attendee at various "lunch or dinner meetings" on [Healy's] expense reports. Many of these "meetings" took place on weekend dates. Mr. Burnham had never been to lunch or dinner with [Healy].
>
> 18. Based on these incorrect expense reports by [Healy], Westinghouse undertook a detailed review of [Healy's] submitted expenses. This review showed that there were times [Healy] submitted two to three expense reports per day.
>
> 19. The review of [Healy's] expense account reimbursements also showed that many of these charges were cash advances. Many more were for expenses that were unrelated to [Healy's] business responsibilities for Westinghouse, such as repeated weekend charges at a York, Maine fish market, multiple charges at the New Hampshire Liquor Store, and recurring charges at a local artist supply and craft store. Many of these charges occurred at times when the Newington facility was closed for holidays or on dates when [Healy] was on vacation.
>
> 20. Many of [Healy's] expenses listed other Westinghouse employees, including but not limited to Mr. Burnham, as having attended luncheons and other meals paid for by [Healy]. The internal investigation showed these employees had not attended these meals.
>
> . . . .
>
> 23. During the December 21, 2006 meeting, [Healy] admitted that many of the charges he submitted as business expenses were in fact personal expenses and asked if he could repay the money without losing his job.

Compl. ¶¶ 17-20, 23. That is sufficient detail for fraud pleading purposes and to permit Healy to admit or deny the claims. If Healy needs more detail in order to defend against the claim factually, he can obtain it in discovery. Indeed, in

---

the plaintiff merely to obtain federal court jurisdiction.

response to Healy's motion to dismiss, Westinghouse and its affiants have already produced a further detailed list, which includes the date, location, and content of every specific expense alleged to be fraudulent.  See Frisbey Aff., Ex. A.

## CONCLUSION

The defendant's motion to dismiss is **DENIED**.  The plaintiff's request for attorney fees and costs is **DENIED**.

**SO ORDERED.**

**DATED THIS 21ST DAY OF AUGUST, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**